And how long do you need for your opinion? Good morning, Your Honor. My name is Carolyn Clarquist, and I represent the appellant, Bobby Selvie. And I need five minutes in rebuttal. I mean, I have my 15 minutes. Okay. Good morning. Assistant State's Attorney Gina DeVito for the people of the state of Illinois. And how long do you need? Just the regular 15 minutes, Your Honor. Regular 15. Okay. Thank you. Good morning. We've raised several issues on appeal. And today I'd like to address three of those issues in detail. The first being the improper admission of gang evidence, which morphed into drug evidence. The second issue is prosecutorial misconduct. And then the third issue would be factor inherent in the offense at sentencing, where our client got the maximum possible term for this offense. Gang evidence is only admissible in cases where its probative value outweighs its prejudicial effect. In this case, it was admitted under the guise of motive evidence to explain an otherwise inexplicable event. Prior to trial, the state asserted that the evidence about Mr. Selvie's gang membership should come into evidence based on the theory that the victim in the case was shot by the gang because they were trying to protect a fellow gang member who was being chased by the officer at the time. At trial, however, there wasn't sufficient proof that the offense was gang related and that the motive itself related to the gang. Well, what about Butler's testimony that he brought the weapons over that evening, gave one to Selvie, kept one for himself because they were working protection? Right. What he said is, and he defined protection during his direct examination, he said that working protection for the gang means looking out for rivals, looking out for the police, and alerting the drug sellers that if the police arrive, they should disperse. There was nothing in his testimony which even remotely suggested that shooting at police officers was part of gang security. You just said looking out for police. Right, looking out for police, but part of that, and parcel to that, shooting at police officers would seem to be counterproductive to the gang's purposes. But it's not, as I understand the purpose for which this evidence was submitted, it was to explain why Mr. Selvie and Mr. Butler were on the porch armed. I didn't understand the state to be contending that we're admitting this evidence on the ground that they planned to shoot police officers that night. They were there to work protection for whatever reason. Right. Isn't that context? Well, I guess what I would say about that is there was no evidence at all from any party or any witness saying that shooting the police officer was part and parcel of gang security. It was very specific what he said gang security was. And in addition to protecting, the theory was we're going to protect a fellow gang member. And if this court believes that itself was proper, the error then occurred when further evidence about the so-called drug operation and the use of young children and older drug addicts in the drug trade was admitted in addition to the theory that this officer was shot by the gang because they were protecting their fellow gang member. And we have argued that there was no evidence that any drug sales were going on, which that is what the drugs... But there wasn't instruction by the court. The instruction was that Mr. Selvie wasn't selling drugs. The instruction was not that you should only, you shouldn't consider young children and older drug addicts being used in the drug trade in a predatory fashion. That's inflammatory. That evidence had nothing to do with the motive, the alleged motive in the case. It wasn't relevant, and even if it was relevant, it still had to be balanced against its probative value versus its prejudicial effect. There was no young children or older drug addicts out there dealing drugs for this gang. Butler stated there was no drug sales, and more importantly, neither officer who testified said they saw any drug activity going on at this time. Wait a minute, wait a minute. Mr. Spruill was on this corner. He ran from the police. The fact that there are no customers doesn't mean that he wasn't available to sell drugs. It just means that at 1 o'clock in the morning after Mother's Day, nobody happened to be on the corner buying it. Actually, he wasn't on a corner anywhere. He was standing in front of the Selvie house, and when the police arrived, he started walking and fumbled to a gate. So the officers got out of the car and he ran. But the problem is there's no evidence that he had drugs on him or a gun, which is something the state repeatedly said in its closing argument. For all we know, he could have been on parole and in violation of his curfew. We have no idea why he ran from the police. And to say that he was a drug seller when there's no evidence of that and certainly wasn't caught with any drugs. No drugs were found in the area. It was sweeped very carefully. It's not like they found. There was testimony that he was part of the same gang, though. That's right. And that their business was selling drugs. That's right. But there's no evidence he was selling drugs at that time. And actually Butler himself said there were no drug sales going on. He's fumbling at a gate. That's not drug selling. That's fumbling at a gate. And the reason why he ran, we have no idea. But to presume that it's because he had drugs on him with the intent to sell or maybe had a weapon on him is pure speculation. And there's simply no evidence that that occurred. In addition to that, since there were no children or older drug addicts, what could be more inflammatory than that evidence going to a jury? Did the state mention that in closing argument? They talked about the drug sellers. Children and drug addicts. Well, they talked not specifically, but they did talk about drug sellers being out there that repeatedly peddle the drugs trade. No, they did not specifically mention the young children, but I feel at that point that the harm has already been done. And it's been done because initially you have Officer Johnson testifying about the gang. He gets into excessive detail about the gang. And we learn about the folks and the gangster disciples. And this is a faction of it. We find out how many people are in this particular faction. None of which goes to the motive, which is either to protect the fellow gang member or if you believe it's protecting the drug trade. The jury doesn't need to know all that evidence. It was too much. It was excessive. And as this court found in People v. Mason, it was inflammatory. It misdirected the jury's attention from the issue at hand, which is the identity of the shooter and the motive that's inherent in that question. And also it's misdirecting its attention to other issues that are just not relevant. Wasn't Mason the case where they had absolutely dozens of references to different aspects of the gang activities? They had a lot of references. But I would submit that in our case we had this too. Johnson, the officer testified about field interviews with gang members, contact cards, CPD files. He took a class in gangs. He also learned he didn't specify who's in the hierarchy, but he said he talks about the gang hierarchy, rivals, what their turf is, how many members are in the gang, which nation it belongs to. Can all that help explain why Selvey might have shot at Johnson? It's just too tenuous. That's motive in the abstract. The fact that the 50 strong belongs to the gangster disciples has nothing to do with the fact of whether Selvey shot the officer to protect a fellow gang member. So how would the, in your view, you've got a police officer running by a home who's shot. State says one of the people on the porch shot him. Other than that unexplained, unprovoked act, what would the state be allowed to introduce to explain why this occurred? I think possibly you could argue that they were gang members, that the people on the porch and Lester. But our issue is that it went beyond that. It went into more irrelevant, inflammatory, and excessive information. That wasn't necessary for the trier of fact. As I pointed out, why does the jury need to know who's the identity of the drug seller? How is it relevant that young kids and older drug addicts are using the drug trade? They're not out there. Again, there was a instruction. You don't think the instruction went far enough, but there was an instruction. But the instruction had nothing to do with the young kids or the older drug addicts being used. All the instruction is that Bobby Selvey wasn't out there selling drugs at the time and is in charge with that. Well, that's not an issue in dispute. So them getting an instruction on that is sort of useless. If there was an instruction, possibly it could have been something about you shouldn't use the fact that the gang, you know, has these types of drug sellers. Don't use that as, you know, prejudicial evidence against the defendant. But it goes back to the state having to prove that the motive here, there's a clear connection between what they assert the motive is. And all we have about the motive is Richard Butler. Did the defense raise, ask the court on the sidebar to give a different instruction? Well, I think at that point defense had already objected. His objection was overruled. The judge at that point said, well, I'll give you a limiting instruction on Selvey not being charged with drug crimes. And counsel said fine. But at this point he's already been overruled. What exactly is he supposed to do? The judge has already made its ruling on the issue. And then this initially came in through Detective Johnson. And then, again, the state elicits the same testimony about the predatory use of children during Richard Butler's testimony. So the jury is hearing it a second time. And certainly no limiting instruction is given at that point. And defense counsel had Mr. Butler display his gang tattoos to the jury. I don't recall that. I think that's in the record. I'm sorry. I don't recall that part of the record. There's no doubt that Mr. Selvey was there and that he had a gun. If you believe Richard Butler. And, okay. No one else saw him with a gun. Well, the jury apparently believed him. Well, right. I mean, he had those. And he testified that the guns were brought from someplace else for the purpose of being with the people who were on the porch and their job was protecting gang members. Well, he testified that their job is to provide gang security, protecting gang members, alerting them that the police are coming. Security was two parts, to protect them from other rival gang members. Right. And to tell them if the cops were around. Right. And I don't think there's any dispute that Butler never testified that we thought the police were actually rival gang members that needed to be shot because they were chasing our fellow gang member. There's just no evidence of that. In this case, given how inflammatory gang evidence is, especially in a metropolitan city such as Chicago, going beyond if this court agrees that, yes, it could be admitted for protection of the fellow gang member as motive, inexplicable event, it is a shot out of the dark, we don't know why the shot was fired, but if that goes to motive, then why is all this extra information, extraneous, that's not relevant to the prior fact, admitted before the jury? It has nothing to do with the issue of the identity of the shooter. And it diverts their attention away from what the question is. There's no reason for it. And when the court let in all this information about the drug operation, et cetera, the state was able to capitalize that in their closing argument. It repeatedly moved back and forth, the motive of shooting the officer to protect a fellow gang member. Then it's to protect the drug operation. There's no drug operation going on at that time. And given how inflammatory gang evidence is, there should have been some evidence, even minuscule, that there's some drug activity going on. The officers never testified there was drug activity. Richard Butler, the state's star witness, never said there was any drug activity. They didn't catch up with Sproul that night, did they? No, they did not. So we don't know what was on him. But yet in closing argument, the state repeatedly says that he was definitely holding something. I think four or five times they say, oh, he must have had drugs or a gun on him. Well, as I said, maybe he was on parole and missed his curfew. It's after midnight. We don't know. They didn't catch him. But, you know, for them to say this in closing argument, when there's no facts, since he was not caught, it was improper. We would also like to point out that the state also violated the motion to eliminate when it put in evidence about Bobby Sully's family. The court specifically ruled prior to trial there could be no testimony or evidence about his reputation, evidence about the Sully family. Well, what happens? On cross-examination, defense counsel asks Richard Butler, who lives in the house? Richard Butler says mom, cousins, family members. Well, what happens on redirect? Then the state elicits testimony that two of those individuals are gang members. So now the jury knows that the whole house has gang members in it. But wasn't the issue was raised by defense counsel? Right, and he was overruled. Well, no, what he raised is who's in the house. The theory behind his question was there's more than just Richard Butler and Bobby Sully in the house. There's other people that are in the house. Whether those people in the house have a gang membership, that had been specifically excluded in the pretrial motion. The court didn't enforce its own ruling. It was improper. And, again, it went to more gang evidence that was inadmissible and should have been presented to the jury. Right. Wouldn't evidence that there were other gang members residing in the Selvey household potentially help your client? Because one of the defenses here was we don't know who shot him, and it could have been any number of people. You identified Butler as a co-defendant. Mitchell, who was there, could have been other family members who were gang members. I mean, I think the problem is, and this is what the basis of our argument is, if gang evidence is admissible for the limited purpose of, which is the state's initial theory is that it was to protect the fellow gang member, why are we learning all this other evidence? For instance, the gang membership of the people in the house. Counsel specifically filed a motion in limine to keep that out. That was just strategic choice. I'm not going to second-guess him on that because birds of a feather flock together. I can see why he kept that out. There's no reason for it. And in addition to that, he objected and was overruled. So, again, the court is ignoring its own ruling on the motion in limine. You had a couple of other issues you wanted to address? Yes. One of the issues that we raised in prosecutorial misconduct was improper burden shifting. And this is very specific from the record. Two instances. The state specifically says that the defense could have issued subpoenas for anyone. They could have served a subpoena on anyone in the Selvey house. Defense counsel objective was overruled. As a consequence of that, by overruling the defense counsel's objection, the trial court effectively sanctions the state's presentation to the jury that Selvey had some obligation to subpoena people from his own house. That's not his duty. He doesn't have to present any evidence whatsoever. That's improper burden shifting, and that's reversible error. You can never shift the burden of proof to the defendant. Never. This was also done in rebuttal. Counsel objected. He's overruled. He gets no opportunity to speak again about this issue. It was highly improper. It was not invited error. And you just simply, the cases have said repeatedly, you cannot shift the burden of proof. It's impermissible. They did it again when they talked about the crime lab people saying anyone could test the evidence. Again, he doesn't have to test the evidence. Wasn't the suggestion in the cross-examination and in the argument that this was a rush job, and so you can't trust these results because it was a rush job? No. This statement was made during the state's initial argument, and what they referred back to was something that counsel brought up in cross-examination. I've seen no case that says that the state can shift the burden of proof based on something that defense counsel said during his cross-examination. These were the state's witnesses. This isn't an instance where the defense has presented some evidence, and maybe you could argue that these witnesses are not credible, something to that effect. All counsel was doing was trying to establish how soon the evidence was tested. So for the state then in its closing argument to say to the jury that anyone could have tested the evidence, that shifts the burden to him because it makes them think, well, yeah, anyone could have tested the evidence. And, again, the same issue goes with the subpoenas. That's flagrant error. There's no purpose for it other than to shift the burden of proof. It went to nothing except to prejudice Selvey and shift the burden to him, which is not permitted. Additionally, I would also argue that with the bolstering of the author's credibility, the cases have said that that has an implicit insidious effect of also shifting the burden of proof. This came as discussed in Wilson and also this court's case in Yonker. And in those cases, what happened, which is exactly what happened here, you have the prosecutor in initial argument and in its rebuttal, again, vouching for the credibility of the officers, saying you have to believe them, they're not liars. And what the courts have said, this court has said, in both Wilson and Yonker, is that amounts to burden shifting. Because what it does is it makes the jury think that because this is the prosecutor saying this, then the danger is that the jury could rely on the integrity of the state's attorney's office and defer his judgment on the credibility of those witnesses. The other problem with it is it's not an us versus them. The state has to prove every element of the offense beyond a reasonable doubt. Our witnesses are more credible than yours. It's not appropriate. It shifts the burden because it makes the jury think, well, if we believe this side a little more than we believe that side, then we should convict this defendant. And that's improper. And we would ask that this court look at those two decisions because the rationale behind that rule about burden shifting and why vouching for credibility is improper, it explains the reasoning behind that. And it makes sense because if you think about it, if you're bolstering the testimony of all your witnesses saying they're not liars, that's not their character, they're good guys, the state at one point even referred to themselves as good guys, it's the good guys being us versus them. And they've already dirtied them up by talking repeatedly in their closing argument about the drug operation that was not going on at the time, repeatedly. They talked about Lester, he's holding a gun, he must have drugs, not a fact in evidence. They also talked about, and this all relates back to the gang evidence, how Selby must have shot this man because he was protecting a fellow gang member, and if he didn't do it, he would be, quote, facing in the gang. No testimony about that whatsoever. So when you have the state vouching for its witnesses, and you have all this extraneous information about the gang evidence, facts not adduced into evidence, that results in a denial of a fair trial. The other point I would like to make is that they also vouch for the crime lab people as well, saying they didn't make this up. In addition to that, I think if there are no more questions on prosecutorial misconduct, I'd like to talk about factor inherent in the offense. In this case, and the transcript really speaks for itself, if you read the sentencing transcript, the first six, seven pages, all about accolades of the officer. No one disputes that we appreciate and respect our police officers, but when it comes to sentencing, the case law is very clear, you cannot, in aggravation, rely on a factor inherent to the offense. And that's exactly what happened here, because the fact that the officer is the victim has already been factored into the sentencing range. The judge didn't even acknowledge that. And yet what happens? He keeps talking about the officer repeatedly, the thin blue line, how he's out there on Mother's Day, he could have just gone home, he's protecting the community. None of that is in dispute, but it's also not relevant at sentencing. And the reason for that is because the legislature has already factored in the victim's status. If it's a police officer, it gets an elevated sentencing range. And in such cases where the record is unequivocal, it's clear from the record that the trial judge relied on a factor inherent in the offense. He enunciated the factors in aggravation. That wasn't one of them. After several pages of talking about the officer, and I think the case law says that if you can't tell from the record and possibly this aggravating factor was used against the defendant, you have to send him back for resentencing. In this case, we say it absolutely was used against the defendant because he got the maximum sentence, 60, range was 20 to 60, he was offered 20 on attempt for a serene murder, which is the minimum, by the way, and yet gets acquitted of that offense and then is sentenced to the maximum of the actual lesser offense. And what's the explanation for that? Well, if you look at the sentencing hearing, it's pretty clear. And one could just as easily look at the judge's remarks and say this is really just a sort of brief chronology and history of the legislative intent for setting aside this difference in the statute. Well, I think the sentence speaks for itself. The factors in aggravation speak for themselves. They were listed. But we can't say from the record that the judge didn't kidnap him. When the judge, for the first six, seven pages of the sentencing hearing, all is discussed at all is the officer and how he should heap accolades on them. That's a factor inherent in the offense. That's why the sentencing range is larger than it is for aggravated battery of a firearm to a civilian. And that's where, when the maximum sentence is imposed, you can't say from this record that it had no impact. You know, the judge doesn't talk about anything regarding the defendant who's actually getting sentenced until much later in the sentencing hearing. And at that point, it's pretty clear what he's already planned to do. So for those reasons, we would ask that you consider the issues in our brief and that you find that he was denied a fair trial based on the inadmissible gang evidence that was prejudicial, also that he was denied a fair trial from the numerous and excessive comments made during the state's closing argument, and that finally, if you don't grant him a new trial, that he receive a new sentencing hearing based on improper consideration of factor inherent in the offense. Thank you very much. Thanks. May it please the court, Assistant State's Attorney Gina DeVito for the people of the state of Illinois. Your Honor, the evidence in this case was overwhelming against the defendant where he shot Detective Johnson in the back while he was pursuing an offender. The evidence established that Detective Johnson and Amato saw Defendant Johnson immediately prior to the shooting on the porch of the 852 building. That butler testified to giving Defendant the Ruger handgun immediately before, to use it as security for the gang, and then watched Defendant walk out onto the porch of the 852 building as Detective Johnson ran by. He then heard a gunshot that sounded like it came from the porch. He then watched the defendant walk back into the home with the Ruger handgun, say, I fucked up, and then ask for the co-offendant butler's weapon. He then took those weapons and headed towards the back of the house to hide those weapons. They were then found in the house with the defendant who hid in the house for up to eight hours while police were ringing the doorbell and trying to gain entry. The Ruger handgun was determined to be the gun that shot Detective Johnson when those weapons were recovered, and Defendant's fingerprints were on the magazine that is the clip to put the bullets into the weapon. One of the positions the state takes in its brief is that there was sufficient direct evidence of Mr. Selvey's guilt to support his conviction. What direct evidence? I've listened to your summary of the evidence. It's a lot of circumstantial evidence. What direct evidence is there? Your Honor, there was the fired cartridge case off the porch at the 852 building that showed that it came from the Ruger handgun. The Ruger handgun was found inside the house secreted towards the back of the building where Defendant was hiding. And that, if you don't have, you have the defendant's fingerprints on the Ruger handgun. Not on the gun. On the magazine. Excuse me, on the magazine. And these weapons were found in proximity to Defendant. Was that the room that had the parking tickets or something? No, it was not. It was a separate porch up on the third floor in the back. Was he found in the room where the crawl space was? No, he was not, but I believe he was found on that third floor. In regard to the gang evidence, Your Honors, it was very relevant to show common design and motive because it explained an inexplicable act. But the question is what about the use of juveniles and drug users? How is that at all relevant? Your Honor, it is highly relevant to show Defendant's role in the hierarchy. You cannot understand his role as security for this gang enterprise without understanding what the other roles are in the gang. But it could have been other gang members out there on the street selling. Of what relevance is it that it's minors and drug addicts? Well, I think that how the testimony came in was asking Detective Johnson how the system works within this gang. And it was merely a sentence that was stated, young juveniles and older people do these roles and adult Defendant's age work security. But even the judge recognized there was something that he had to say. And he did say something, but as we heard, he didn't say enough. He didn't say you should not consider this with regard to Mr. Selvig. Your Honor, the trial court said something after an objection by Defendant and offered to make that disclaimer to the jury. I think that the disclaimer was plenty to say to them, he was not involved in drug, and he was not, this is not about drugs. This is about the gang. And he was part of a gang, and we're trying to establish his role in the gang. And that's the only reason you should consider this evidence. The trial court also correctly allowed the gang evidence after his ruling on the motion in Limney. There, a great deal of evidence was kept out by the trial court, including the fact that nine members of the Selvig family had been arrested previously, that a great deal of ammunition and weapons had been recovered from the home. All of the state's lines of questioning were formulated to not have that evidence come out at trial. When defense counsel cross-examined co-offender Butler about who was in the home, and it was established that there were a great number of people in the home, the state's attorney then, in recross, asked whether those family members were gang members, because it was in keeping with the state's theory of the case that this was a gang enterprise occurring in the house. And even, Your Honor, you mentioned that the trial court did state that this testimony was helpful to defend it, because it added more people into the home. Even if there is error in the admission of the gang evidence, it would be harmless, where the outcome of the trial would have been the same without the gang evidence. The people had testimony that the defendant was seen by officers Johnson and Amato directly before the shooting. Butler still could have testified that the defendant walked out onto the porch with the Ruger that was found to be the handgun, heard a shot, and walked back in. His fingerprints were still on the magazine, and all of those things would still determine his guilt. Your Honor, I believe in terms of the gang tattoo question, I believe that those were just co-offender Butlers that may have been shown, and not defendants. If you don't have further questions about the gang testimony, I'll move on to the prosecutor's comments. They were proper, and were reasonable inferences from the evidence, and did not deprive the defendant of a fair trial. The trial court is in the best position to determine the prejudicial effects of these remarks, and so absent a clear abuse of discretion, it should be upheld. Well, isn't it generally improper in a case like this for a prosecutor to say about the police officer, witnesses, victims, etc., they're out there to protect all of us, they're out there protecting the citizens of Chicago. Isn't that improper? Your Honor, no, where in this case, defense counsel had been attacking those witnesses, implying that they were lying or misremembering or feeling pressured. Yeah, misremembering is another word for he's not told you the truth. I get that, but what does the fact of their status as police officers risking their lives every day, protecting the citizens of Chicago, have to do with this particular police officer's credibility? Your Honor, the state's attorney was simply establishing what his role was. He was a police officer involved in the line of duty that night. They had heard that testimony. He was pursuing a criminal. The closing argument comments were not anything that the jury hadn't already heard, that he was out there fighting against crime. In addition, in regard to the statements about the crime lab people were not going to make stuff up and they could have subpoenaed anyone, those comments were proper. However, if you look at the case of People v. Albanese, where the prosecution argued that defendant had subpoena power and could have brought in additional evidence to substantiate his claim, the court ruled it was not shifting the burden because the prosecution was pointing to defendant's failure to submit evidence that would tend to refute the case against him. Here, it was the same thing. In the cross-examination of the crime lab people, there was a sidebar when the state objected to the testimony that was attacking the crime lab people's witness, saying that the case was rushed and that the crime lab people were working with the police. And the defense counsel in the sidebar stated, and I quote, it is our position in this case that the police are on a directed mission and that they were attempting to influence the Illinois State Police opinion. And therefore, it was appropriate for the state's attorney to rebut those remarks in closing. But there was nothing that the defense stated in closing with regard to the crime lab? That's correct, Your Honor. If you don't have any further questions about the prosecutorial misconduct, I'll move on to the sentencing. The sentence was proper as it was within the range. And here, the statement that the trial court improperly considered the fact that the victim was a police officer has no merit when looking at the entire 14 pages of the record. The trial court had just heard the victim impact statements of Detective Johnson, of Detective Johnson's wife, and I believe 12 other victim impact statements that he read. Detective Johnson was in court for the sentencing. He was addressing Detective Johnson. And indeed, as Your Honor Paczynski stated, the trial court was explaining why the legislature had established these guidelines. And that is why he talked for the beginning of his sentencing about the fact that he was a police officer. He was stating that the sentence is enhanced because we recognize these people, these police officers have a unique position in our society. And it is our job to protect them. The court also discussed the five prior felonies of defendant and the manner of which this officer was shot in the back while pursuing a suspect who was a fellow gang member of defendants. Your Honors, if there are no further questions for these reasons and those stated in our brief, we ask that you affirm defendant's conviction. Thank you very much. Just a few points of clarification. One thing the State said is that the direct evidence which you asked, Justice Mason, the State argued that the Ruger was the weapon used in the offense. That's not true. How they linked the Ruger to the offense is they found a cartridge casing outside and that cartridge casing was found to have been shot out of that weapon. What we also know from the State's closing argument, this is a gang infested neighborhood where everyone is armed to a T. I have no idea if that cartridge case was there earlier or later, but there is no direct evidence that that particular weapon was used to shoot the officer. But there was no evidence that any other cartridge cases were found in the vicinity of the home either. That's correct, but also there's always a possibility a revolver was used in the shooting. We just don't know. Revolvers don't expel cartridge cases. The State also argued that they contended, of course, that the gang evidence was admissible. We dispute that point. I'd like to point this Court's attention to the fact that this issue is fully preserved. Counsel made it very clear in his motion, and the judge did, that it was limited to protecting a fellow gang member. Our position is that it went way beyond that. It opened the floodgates into this evidence about the children and the older drug addicts, which could not be remedied by the limine instruction, which had nothing to do with children or old drug addicts being used to peddle the drug trade. Additionally, the evidence is not closely balanced. It's far from closely balanced. We contend, from our first argument, we made a three-prong attack on the sufficiency of the evidence. And I think for the reasons that we made very clear in there, we think that this case is far from overwhelming. It's very underwhelming. There's no direct evidence, no statement. All you have really is Richard Butler, who got out of jail for his testimony. He's the only one who talks about the gang security, too. But the jury knew that. The jury knew he was a co-offender and that he had reached a plea deal with the state. Right. They knew that. Right. We also don't know if the jury – our client's convicted of aggravated battery with a firearm. We don't know did they convict him under a theory of accountability. If that's the case, as we've argued in our brief, he's not accountable for the shooting. It seems to be an inexplicable act in that sense, if you believe what Butler's testimony was, that someone went out – assuming someone went out and shot the officer. Additionally, there was one or two other points I wanted to make. About the prosecutorial misconduct, again, fully preserved by defense counsel. I'd like this court to take notice of the fact that each time counsel objected to the issues that we've raised in the brief, overruled by the trial court. What does that do? That sanctions whatever the state has just said that counsel has objected to in the eyes of the jury. That includes the burden shifting. Saying that the defendant could have subpoenaed anyone, that's absolute burden shifting. It's plain on its face. It's impermissible. And courts have found that that comment, standing alone, is reversible error. Additionally, with the officer's credibility, this wasn't in response to some attack on the officers. Justice Mason, you pointed out that counsel did argue that the officer misremembered. That's the word used by defense counsel. But if you look at his act, what else did he say? He went back to the evidence. And he said, too, the officer's not lying. He fully believes that our client shot him. No one's disputing that. I think there's plenty of cases where you have a witness on the witness stand, and they're certain that's the offender. It doesn't mean they're lying. They might just be wrong. And in this case, we've argued that that is incorrect. Finally, we would ask you to look at the transcript as a whole. Reviewing courts always say, we're not going to take isolated remarks out of context. We welcome the court to look at this transcript from closing argument. Look over it with a fine-tooth comb. There's a litany of errors there. This is a textbook example of what's improper in a closing argument. Same goes for the sentencing hearing. We ask you to look at that hearing, the transcript from that hearing, in its totality. What is the judge really talking about there? And when the defendant gets the maximum sentence after being acquitted of a lesser offense, why is that not troubling to the court? It should be, especially based on that transcript. And for those reasons, if the court doesn't have any further questions, we'd ask that you reverse this conviction outright based on our first issue. Otherwise, remand for a new trial, and in the alternative, grant him a new sentencing hearing. Thank you very much. Thank you. Appreciate the arguments of both counsel. And good arguments left for us to consider because you did raise several issues. And we'll take it under advisement. You're adjourned. Thank you.